[Dkt. Ents. 23, 26]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DONNELL BATTIE,<br><br>        Plaintiff,<br><br>  v.<br><br>WAL-MART STORES, INC., XYZ CORPORATIONS (1-10), and JOHN/JANE DOES (1-10),<br><br>        Defendants. | Civil No. 12-2807 (RMB/KMW)<br><br>**MEMORANDUM OPINION AND ORDER** |

      Currently before the Court are two motions filed by Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant"): a motion to dismiss the Second Amended Complaint (the "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Ent. 23), and a motion for sanctions pursuant to Federal Rule of Civil Procedure 11(b) (Dkt. Ent. 26). For the reasons set forth below, the motion to dismiss is GRANTED and the motion for sanctions is DENIED.

**I.    BACKGROUND**

      In its prior Memorandum Order, the Court laid out the substance of the allegations underlying Plaintiff's claims and so will not reiterate in detail those allegations here but will provide a brief procedural history. Plaintiff initiated this cause of action by filing a complaint in New Jersey state court on March 14, 2012. Wal-Mart removed this matter on May 10, 2012, invoking the Court's

1

diversity jurisdiction. Wal-Mart then moved to dismiss the complaint on grounds that it violated Federal Rule of Civil Procedure 8(a) by failing to specify the claims or to set forth the basis of any such claims. Plaintiff filed an amended complaint. Defendants moved to dismiss the amended complaint on similar grounds, and on February 20, 2013, the Court dismissed Plaintiff's claims without prejudice. In doing so, the Court pointed out the amended complaint's lack of clarity and then liberally construed it as asserting claims for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). Further, while the Court permitted Plaintiff to amend his pleading (in part because the Court had to guess which causes of action Plaintiff was attempting to assert), it noted its suspicion that "such amendment would be futile" in light of the deficiencies noted in its Memorandum Order. (Mem. Order, Dkt. Ent. 21, at 11 n.2.)

Nevertheless, Plaintiff filed the SAC on March 20, 2013, which Wal-Mart moved to dismiss for reasons nearly identical to those it has argued previously. To date, Plaintiff has failed to respond to either Defendant's motion to dismiss or its subsequent request that the Court deem its motion unopposed in light of Plaintiff's failure to respond. Nor has Plaintiff filed a response to Defendant's motion for sanctions under Rule 11(b).

Mindful of the Third Circuit's preference that actions be resolved on their merits rather than procedural technicalities, the

2

Court will address the merits of Defendant's motions despite Plaintiff's failures to respond. See, e.g., Foman v. Davis, 371 U.S. 178, 181-82 (1962); Quinn Const., Inc. v. Fidelity & Deposit Co. of Maryland, No. 06-591, 2009 WL 1905174, at *8-9 (June 30, 2009). In doing so, the Court refers to Plaintiff's opposition to Defendant's motion to dismiss the first amended complaint, which addressed similar arguments to those Defendant now asserts. (See Opp., Dkt. Ent. 18.)

## II. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this requirement, a pleading must provide the defendant with "fair notice" of what the plaintiff's claim is and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 n.3 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n. 27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (". . . [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.").

As an initial matter, despite the Court's previous warnings to Plaintiff (see Mem. Order at 4-5), the SAC reflects the same ambiguities concerning the causes of action asserted as Plaintiff's prior complaints. For example, Count I asserts for the first time a claim under the New Jersey Law Against Discrimination (the "LAD"), N.J. Stat. Ann. § 10:5-1, et seq., but it does not specify under which section or sections this claim is brought. As the relevant allegations refer to Defendant's status as a "public accommodation" (SAC ¶¶ 13-15), the Court infers that Plaintiff's claim is brought pursuant to § 10:5-12(f)(1), which addresses discrimination in places of public accommodation.

The other counts are similarly unclear. In Count II, Plaintiff refers to the "negligent conduct" of Defendant but then seeks to recover for emotional distress. (See, e.g., SAC ¶¶ 26, 28.) A few paragraphs later, however, the SAC refers to allegedly "intentional"

4

acts for which the unnamed defendants are purportedly "responsible." (See SAC ¶ 30 ("Defendant Doe and Defendant XYZ were responsible for the aforementioned intentional or negligent acts . . . .").) As with Plaintiff's prior complaint, the Court is guided by the relief sought and interprets the SAC as once again attempting to assert a claim for the negligent infliction of emotional distress ("NIED").[1] (See also Mem. Order at 4-5 (citing Twombly, 550 U.S. at 555-56 n.3)); Jablonowska v. Suther, 948 A.2d 610, 616-18 (N.J. 2008) (describing the tort of negligent infliction of emotional distress in New Jersey). The Court addresses these claims in turn below.

**A. LAD**

Defendant first argues that Plaintiff's LAD claim is untimely as it was first asserted well outside the two-year statute of limitations applicable to such claims. See Montells v. Haynes, 627 A.2d 654, 659 (N.J. 1993). Because Plaintiff alleges that the incident occurred on March 14, 2010 (SAC ¶ 7), he would have had to file any LAD claims on or before March 14, 2012, when the limitations period expired. However, under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment of a pleading relates back to the date of the original pleading when the newly-asserted claim "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." In other words, the courts look to whether

---

[1] Even if Count II also asserts a cause of action for negligence, as Defendant suggests, this claim fails for the same reason that Plaintiff's NIED claim fails – no duty of care.

5

the pleadings share a "common core of operative facts." <u>Cottrell v. Zagami, LLC</u>, No. 08-3340, 2010 WL 2652229, at *5 (D.N.J. June 23, 2010). Here, although Plaintiff asserted his LAD claim more than three years after the date of the incident, the claim is based upon the same factual predicate that formed the basis of Plaintiff's prior complaints, <u>i.e.</u>, the discriminatory announcement made by a sixteen-year old boy, and therefore this claim relates back to the original March 14, 2012 pleading. (<u>See</u> Ex. A, Notice of Removal, Dkt. Ent. 1-2)

    Nevertheless, the claim must be dismissed. Section 10:5-12(f)(1) of the LAD makes it unlawful:

> For any **owner, lessee, proprietor, manager, superintendent, agent, or employee** of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . to any person on account of the race . . . of such person . . . .

(Emphasis added.) Plaintiff essentially seeks to hold Wal-Mart vicariously liable for the offensive speech of one of its customers. The SAC, however, does not allege that Wal-Mart exercised any control over the customer. Wal-Mart cannot, therefore, be held liable under § 10:5-12(f)(1). In <u>Hunt v. Callahan</u>, No. L-1493-09, 2012 WL 5381699, at *6 (N.J. Super. App. Div. Nov. 5, 2012), the New Jersey court declined to hold the defendant liable for allegedly discriminatory comments made by an unknown person that was neither an agent nor an employee of the defendant. <u>Id.</u> ("Hunt claimed that, when she entered

the VFW building, she heard voices stating 'what is she doing here' and 'kick her out.' However, . . . Hunt could not identify the person or persons who made those remarks, and there is no evidence attributing the comments to an agent or employee of the VFW."). As in Hunt, the offending speaker here is neither an agent nor an employee of Defendant. Accord Franek v. Tomahawk Lake Resort, 754 A.2d 1237, 1243 (N.J. Super. App. Div. 2000) ("It is unquestionably a violation of the LAD for the **owner or operator** of a public accommodation to tell a person, either directly or indirectly, that his or her patronage is not welcome because of a trait or condition which the LAD protects from discriminatory action . . . .") (emphasis added).

Indeed, even where the harassment is committed by an employee – over whom an employer could arguably be said to exercise some amount of control – courts have extended liability to the employer only "(1) when the employer grants a supervisor authority to control the workplace and the supervisor abuses that authority to create a hostile environment; (2) when the employer negligently manages the workplace by failing to enact anti-harassment policies and mechanisms; or (3) when the employer has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination." Davis v. Torres, No. L-5972-08, 2012 WL 1033287, at *4 (N.J. Super. App. Div. Mar. 29, 2012) (internal citations omitted) (refusing to find employer liable under § 10:5-12(f)(1) for discriminatory comments of employee where no evidence that employer

7

knew employee intended to discriminate and employer promptly took remedial action upon learning of the comments).[2] Applying similar standards, the New Jersey Supreme Court held that a school district may be liable under § 10:5-12(f) for student-on-student harassment "that creates a hostile educational environment when the school district knew or should have known of the harassment, but failed to take action reasonably calculated to end the harassment." L.W. v. Toms River Regional Schs. Bd. Of Educ., 915 A.2d 535, 550 (N.J. 2007).

The SAC, however, does not state a claim under any of these standards. Even assuming that the comment "all black people must leave the store"[3] was sufficiently pervasive and severe so as to create a hostile shopping environment for Plaintiff, the SAC does not plausibly allege that Wal-Mart failed to take action reasonably calculated to end the harassment committed by another customer of its store. Rather, the SAC alleges that within five to ten minutes of the sixteen-year old's comment, Wal-Mart management announced that the customers should disregard the prior announcement. (SAC ¶ 10.) The police later investigated the incident and the perpetrator was

---

[2] Although the court in Franek questioned whether principles applicable to employment discrimination cases should also be applied in public accommodation cases, 754 A.2d at 1242, the Supreme Court of New Jersey later did just that in L.W. v. Toms River Regional Schools Board of Education, 915 A.2d 535, 550 (N.J. 2007).

[3] The SAC alleges that the sixteen-year old had made a previous racist comment over the public address system, but it does not allege that Plaintiff was present at that time. (SAC ¶ 12.)

identified and charged. (Id. ¶ 11.)[4]

Accordingly, this claim is dismissed.

**B. Negligent Infliction of Emotional Distress**

Although the Court previously dismissed Plaintiff's NIED claims for failure to state a claim, Plaintiff has repled this cause of action with few changes. Once again, the claim fails.

As the Court explained in its prior Memorandum Order, New Jersey courts generally permit a cause of action for NIED "where the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in substantial bodily injury or sickness." See Falzone v. Busch, 214 A.2d 12 (N.J. 1965). Plaintiff now alleges in the SAC that, upon hearing the announcement that "all black people must leave the store," he "became terrified in that he felt his safety and well being were in direct threat of danger" because of the "imminent terrorist threat against him." (SAC ¶ 9.) Plaintiff also conclusorily alleges that he reasonably feared immediate personal injury that gave rise to emotional distress that resulted in substantial sickness. (SAC ¶ 26.) These allegations, however, are insufficient to state a plausible claim for relief. See, e.g., Norris v. Securitas Sec. Servs. USA, Inc., No. 10-6809, 2011 WL 3206484, at *5 (D.N.J. July 27, 2011) ("Additionally, [Plaintiff] has not pled any facts showing that she was placed 'in reasonable fear of immediate personal injury.'"); see

---

[4] Moreover, Plaintiff previously acknowledged that Wal-Mart issued

also Marin v. Landgraf, No. 11-690, 2013 WL 356623, at *6 (D.N.J. Jan. 29, 2013).

Wal-Mart additionally argues that it did not have a duty of reasonable care to prevent the sixteen year-old boy from making the offending statement. The Court agrees. An NIED claim requires a plaintiff to show, inter alia, that the defendant breached a duty of reasonable care owed to the plaintiff. See, e.g., Billings v. T.D. Bank, NA, No. 13-2969, 2013 WL 3989572, at *3 (D.N.J. Aug. 1, 2013). "Whether a duty exists depends upon an evaluation of a number of factors including [t]he nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interest of, and the relationships between or among the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution." Kuehn v. Pub Zone, 835 A.2d 692, 697 (N.J. Super. App. Div. 2003) (quoting J.S. v. R.T.H., 714 A.2d 924, 928 (N.J. 1998)); see also Amentler v. 69 Main Street, LLC, No. 08-0351, 2011 WL 1362594, at *3 (D.N.J. Apr. 11, 2011). These factors militate against finding a duty here.

The fact that this same individual accessed Wal-Mart's public address system to make a racial and spiteful comment earlier is not enough to make it foreseeable to Wal-Mart that such individual would do so again. One or two isolated, random events, no matter how

---

an apology to its customers later that day. (See Opp. at 14.)

egregious, are not enough to put a defendant on notice of the potential risk of harm. See, e.g., Gargano v. Wyndham Skyline Tower Resorts, 907 F. Supp. 2d 628, 634 (D.N.J. 2012) (noting that two previous violent outbursts did not put employer on notice that employee was a sexual threat to other employees); Kamouh v. Bally's Park Place, No. L-170302-06, 2009 WL 910559, at *2 (N.J. Super. App. Div. Apr. 7, 2009) ("The assault here was sudden, unexpected and apparently random in nature."); see also Llaverias v. Shop-Rite Supermarkets, No. A-1904-95T1, 1996 WL 684040, at *6 (N.J. Super. App. Div. Nov. 6, 1996) (finding attack on customer inside store was not reasonably foreseeable even though there was evidence of twelve criminal attacks within the six months preceding the relevant incident); Restatement (Second) Of Torts § 344, cmt. f (2013) (the possessor of land "is ordinarily under no duty to exercise any care until he has reason to know that the acts of the third person **are occurring, or are about to occur**") (emphasis added).

Plaintiff's allegation that there are videos available at YouTube.com showing non-employees accessing the public address system at various Wal-Mart stores (SAC ¶ 19) does not save his claim. The SAC does not describe the number or contents of these videos or the purposes for which the non-employees accessed the systems at the other Wal-Mart stores. More importantly, the SAC does not allege that Wal-Mart was aware of the events portrayed in the videos or that they

11

were authentic.[5] Regardless, "[f]oreseeability of harm alone is of course not dispositive of whether a duty to exercise reasonable care to avoid the risk of harm to another exists." Keuhn, 835 A.2d at 698.

Even if the harm were foreseeable, the Court declines to imply the existence of a duty. Plaintiff urges this Court to extend a proprietor's "duty of reasonable care to those who enter [the] premises . . . to provide a reasonably safe place to do that which is within the scope of the invitation," Butler v. Acme Mkts., Inc., 445 A.2d 1141, 1143 (N.J. 1982). Plaintiff likens the current situation to those cases imposing a duty of reasonable care upon proprietors to protect patrons from the criminal activity of third parties. See, e.g., Butler, 445 A.2d at 1146 (citing cases). As Defendant suggests, however, to find such a duty here would start the slippery slope that could ultimately require the proprietor of a business to control the speech of its business invitees, to "check its customers' prejudices at the door." Where would such a duty end? Would a plaintiff have a viable NIED claim if another customer were to walk down the aisle and make the same offensive comment as that alleged here? It is difficult to draw a distinction between that hypothetical and the current situation. Although both are truly sad

---

[5] Public access to the speaker system does not in and of itself render it foreseeable that an individual would access the system and utilize it "to broadcast racially intimidating statements" that would cause severe emotional distress to patrons. (See SAC ¶ 18.) It is equally plausible that the videos depict patrons accessing the system to warn other store patrons of a fire that the patron has spotted or some other safety purpose that Defendant might consider a positive consequence

and hurtful, neither should impose a duty on Wal-Mart for the above reasons. This does not mean, however, that such conduct goes unaddressed. As Plaintiff acknowledges, the sixteen-year old was convicted of criminal harassment and racial intimidation. (Opp. at 7; see also SAC ¶ 11.)

Plaintiff has filed three complaints in this action but has been unable to sufficiently state a claim for relief. Accordingly, the Court dismisses Plaintiff's claims with prejudice. See, e.g., DelRio-Mocci v. Connolly Props., Inc., No. 08-2753, 2009 WL 2989537, at *2 (D.N.J. Sept. 16, 2009)("A third opportunity to amend, allowing Plaintiff a fourth opportunity to file a complaint in this action, is unlikely to remedy this. Plaintiff's three bites at the apple are sufficient."); see also Wright & Miller, Federal Practice & Procedure § 1487 (2013) ("In a similar vein, if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied.").

**C. Doe Defendants and Defendant XYZ Corporation**

Because the Court has dismissed the claims against the named Defendants, it must also dismiss the claims against the Doe defendants and XYZ Corporation. Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998)("The case law is clear . . . that an action cannot be maintained solely against Doe defendants.")(citations omitted); see also Ingram v. Twp. of Deptford, 858 F. Supp. 2d 386, 401-02 (D.N.J. 2012).

---

of public access to the system.

**III.   MOTION FOR SANCTIONS**

Defendant has also moved for sanctions pursuant to Federal Rule of Civil Procedure 11. Rule 11 is intended to redress abusive litigation practices, and recognizes that a person signing and submitting a document to the court has a "nondelegable responsibility to the court." Fed. R. Civ. P. 11, advisory committee's note. See generally Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Rule 11(b) violations may be redressed through the imposition of an "appropriate sanction," including attorneys' fees. Fed. R. Civ. P. 11(c)(1), (4). In evaluating an attorney's conduct, "a court must apply an objective standard of 'reasonableness under the circumstances.'" In re Cendant Corp. Deriv. Action Litig., 96 F.Supp.2d 403, 405 (D.N.J. 2000) (quoting Ford Motor Co. v. Summit Motor Prods. Inc., 930 F.2d 277, 289 (3d Cir. 1991)). "Thus, this Court must determine whether a competent attorney who conducted a reasonable investigation into the facts and law pertinent to the case would have determined that the allegations presented against defendants were well grounded in law and fact." Watson v. City of Salem, 934 F. Supp. 643, 663 (D.N.J. 1995).

Defendant argues that the SAC was filed for an improper purpose, sets forth frivolous claims, and fails to meet the standard of reasonableness under the circumstances. The Court disagrees. Although Plaintiff's claims are meritless, the Court cannot say that they are "patently unmeritorious" or that Plaintiff's conduct was so

unreasonable under the circumstances so as to warrant the imposition of sanctions. See In re Cendant, 96 F.Supp.2d at 405 ("[C]ounsel's duty under Rule 11 is counterbalanced by the concept that Rule 11 sanctions are appropriate 'only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous.'" (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991))). Moreover, the record does not suggest that the SAC was filed for an improper purpose or to delay unnecessarily these proceedings. In the absence of any evidence of bad faith, the Court declines to impose sanctions.

**IV.   ORDER**

FOR THE ABOVE REASONS, it is on this **15th** day of **October 2013** hereby

**ORDERED** that Defendant's motion to dismiss is GRANTED, and the claims against Wal-Mart are DISMISSED with prejudice; and it is further

**ORDERED** that Defendant's motion for sanctions is DENIED; and it is further

**ORDERED** that the claims against Defendants Jane/John Doe (1-10) and XYZ Corporation are DISMISSED with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall close the file.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE